**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

**IMPLANT DENTISTRY ASSOCIATES OF MOUNT LAUREL d/b/a CLEARCHOICE DENTAL IMPLANT CENTER & FELICIA D. WILSON, DDS, MS,**

        Plaintiffs,

        v.

**CLEARCHOICE MANAGEMENT SERVICES, LLC & CLEARCHOICE HOLDINGS, LLC,**

        Defendants.

No. 25-cv-16037

**OPINION**

---

**APPEARANCES:**

Carl Louis Peer
LAW OFFICE OF CARL LOUIS PEER
P.O. Box 10
Westfield, NJ 07091

Brenna Dee Kelly
DLA PIPER LLP
1605 Market St.
Suite 4900
Philadelphia, PA 19103

    *On behalf of Plaintiffs*

Brad D. Feldman
DUANE MORRIS LLP
40 Lake Center Drive
401 Route 73 North
Suite 200
Marlton, NJ 08053

Brian A. Colao
John C. Sokatch
Sarah R. Douglas
DYKEMA GOSSETT PLLC
Comerica Bank Tower
1717 Main Street
Suite 4200
Dallas, TX 75201

     *On behalf of Defendants*

**O'HEARN, District Judge**

## INTRODUCTION

This matter comes before the Court on Defendants ClearChoice Management Services, LLC ("CCMS") and ClearChoice Holdings, LLC's ("CCH" and collectively with CCMS, "Defendants") Motion to Dismiss the Second Amended Complaint and Compel Arbitration Pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 60). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons stated herein, Defendants' motion is **GRANTED** insofar as Defendants seek to compel arbitration and **DENIED** to the extent Defendants seek dismissal of this case.[1] The case shall be stayed pending the outcome of arbitration.

---

[1] In *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024), the United States Supreme Court held that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." In *Smith*, the defendants moved to dismiss and compel arbitration, but the plaintiffs argued that § 3 of the FAA required the court to stay the action pending arbitration rather than dismissal of the case in its entirety. *Id.* at 474. Here, too, although Defendants seek only dismissal and an order compelling arbitration, Plaintiffs request that the Court stay the action rather than dismiss the case in the event the Court finds that the claim asserted in this case is subject to arbitration. (Pls.' Opp., ECF No. 63 at 4). Thus, pursuant to *Smith*, the Court shall stay rather than dismiss these proceedings.

## I.    FACTUAL BACKGROUND

Defendants are a "network of dental treatment centers" with "[e]ach ClearChoice Center[] owned and operated by licensed and experienced dental experts." (Second Am. Compl., ECF No. 57, ¶ 2) (internal quotations omitted). Plaintiff Felicia D. Wilson, DDS, MS ("Dr. Wilson") is the sole owner of Implant Dentistry Associates of Mount Laurel, P.C. d/b/a/ ClearChoice Dental Implant Center ("IDA" and collectively with Dr. Wilson, "Plaintiffs"), the company through which a ClearChoice dental practice in Mount Laurel, New Jersey was operated. (ECF No. 45 at 1 n.1).

In 2017, Dr. Wilson entered into a series of agreements to open the ClearChoice dental practice in Mount Laurel, New Jersey. (Second Am. Compl., ECF No. 57, ¶ 13). These agreements included an Administrative Services Agreement between CC Philadelphia, LLC ("CC Philadelphia") and IDA, dated September 15, 2017, amended on July 2, 2020 ("ASA"); an Assignment and Assumption of Lease and Security Deposit, between CCMS and IDA, dated November 1, 2017; a Consulting Agreement, between CCMS and IDA, dated September 15, 2017; a Succession Agreement, between CCH and IDA, dated September 15, 2017; an Intellectual Property Sublicense and Proprietary Software License Agreement, between CCMS and IDA, dated September 15, 2017 ("IP Sublicense Agreement"); a Set Up Fee Agreement, between CCMS and IDA, dated September 15, 2017; a Chattel Mortgage, between CCMS and IDA, dated September 15, 2017; and the Bylaws for IDA, dated September 15, 2017. (*Id.*)

Plaintiffs allege that the aforementioned agreements and the parties' course of business under such agreements created a franchise relationship protected by the New Jersey Franchise Practices Act, N.J. STAT. ANN. § 56:10-1 *et seq.* ("NJFPA"). (Second Am. Compl, ECF No. 57, ¶¶ 12, 13, 90). In support of this assertion, Plaintiffs aver that they invested a significant amount of money in the Mount Laurel ClearChoice facility, including tens of millions of dollars in licensing

fees, administrative services fees, and set up fees. (*Id.* at ¶ 95). Plaintiffs allege that on September 12, 2025, Defendants sent a letter to Plaintiffs terminating the ASA and the IP Sublicense Agreement, in addition to other agreements, without proffering any reason for the termination. (*Id.* at ¶ 103). The letter provided that the agreements would terminate thirty days after receipt thereof. (*Id.* at ¶ 105). Plaintiffs now contend that Defendants violated the NJFPA by terminating Plaintiffs' purported franchise without good cause and the requisite sixty-day notice period required under the NJFPA. (*Id.* at ¶¶ 104-105).

Defendants seek in the present motion an order dismissing this case and compelling Plaintiffs to arbitrate their claim by virtue of the dispute resolution provisions contained in the ASA and the IP Sublicense Agreement. Each of these contracts requires "any dispute or controversy arising out of, or in any way relating to this Agreement" to be submitted first to mediation and then, if not resolved, to arbitration. (Defs.' Mot., ECF No. 60-1 at 6). Plaintiffs, however, contend that Defendants cannot compel arbitration pursuant to the arbitration provision of the ASA because neither defendant is a party to that contract and therefore does not have standing to compel arbitration. (Pls.' Opp., ECF No. 63 at 2). Plaintiffs further assert that Defendants cannot compel arbitration pursuant to the IP Sublicense Agreement because that contract was terminated effective October 17, 2025, and the dispute resolution provision of the contract did not survive termination. (*Id.* at 2-3). Finally, Plaintiffs argue that if the Court compels arbitration, the Court should strike an attorneys' fee shifting clause and a "Limitation of Liability" provision contained in the ASA and IP Sublicense Agreement, compel the parties to first participate in mediation, and compel Defendants to produce the books and records of non-party CC Philadelphia. (*Id.* at 4-6).

## II.    PROCEDURAL HISTORY

Plaintiffs filed the Complaint on September 26, 2025. On October 1, 2025, Plaintiffs filed an *ex parte* motion seeking a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue. (ECF No. 13). On October 6, 2025, after this Court issued an Order to Show Cause regarding the Court's subject matter jurisdiction over the action, Plaintiffs filed an Amended Complaint. (ECF No. 20). The Court thereafter denied without prejudice Plaintiffs' motion for injunctive relief to the extent Plaintiffs sought *ex parte* relief, directed Plaintiffs to serve all previously filed documents on Defendants, and scheduled a hearing on the motion. (ECF No. 22).

The Court conducted a hearing on October 17, 2025, at which time the Court denied Plaintiffs' motion for a temporary restraining order and preliminary injunctive relief. (ECF No. 45). The Court concluded that Plaintiffs are not likely to succeed on the merits of proving that the Mount Laurel ClearChoice dental practice is a "franchise" under the NJFPA and also failed to establish irreparable harm sufficient to warrant injunctive relief. (*Id.*) During the hearing, the Court rejected Plaintiffs' efforts to rely on the obligations imposed by the ASA in arguing that a franchise existed, because the complaint that was operative at that time relied only on the obligations created by the IP Sublicense Agreement and did not refer to the ASA. (ECF No. 52 at 62-63). Following the hearing, Plaintiffs filed the Second Amended Complaint, which is now the operative pleading in this case, citing the rights and obligations created by the ASA, as well as other agreements, in support of Plaintiffs' contention that a franchisor/franchisee relationship existed between Defendants and Plaintiffs. (ECF No. 57).

Defendants filed the instant Motion to Dismiss and Compel Arbitration on December 8, 2025. (ECF No. 60). Plaintiffs filed opposition to the motion on December 23, 2025. (ECF No.

63). Defendants submitted a reply in further support of the motion on January 6, 2026. (ECF No. 67).

### III.   <u>JURISDICTION</u>

This Court has original subject matter jurisdiction over this action under 28 U.S.C. § 1332. Specifically, Plaintiff Wilson is a citizen of Pennsylvania and Plaintiff IDA is a citizen of New Jersey. (ECF No. 21). Defendants CCMS and CCH are both citizens of Delaware and Illinois.[2] (ECF No. 57 at 21-22). Thus, there is minimal diversity of citizenship. Moreover, the amount in controversy exceeds $75,000. (*Id.* at 23).

### IV.   <u>LEGAL STANDARD</u>

**A. Motion to Compel Arbitration**

An arbitration provision involves the waiver of a party's right to have its claims and defenses litigated in court. *See, e.g., Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 309 (N.J. 2014). The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, requires that courts "place arbitration agreements on an equal footing with other contracts and enforce them according to their terms[.]" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted). The FAA strongly favors the enforcement of arbitration agreements. *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020).

The Third Circuit has adopted a two-step test for assessing motions to compel arbitration. *See Kirleis v. Dickie, McCarney & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009). Under this framework, a court must determine whether (1) a valid agreement to arbitrate exists, and (2) the

---

[2] Specifically, the sole member of Defendant CCMS, a limited liability company, is Defendant CCH, which is also a limited liability company. The sole member of Defendant CCH is CC Dental Implants Blocker, LLC. The sole member of CC Dental Implants Blocker, LLC is ADMI Corp., which is a citizen of Delaware and Illinois. (ECF No. 26).

dispute falls within the agreement's scope. *Id.* In some cases, a court must consider whether the parties agreed to arbitrate under the traditional Rule 12(b)(6) standard without discovery, but in others, it must use the Rule 56 summary judgment standard after some discovery. *See, e.g., Matczak v. Compass Grp. USA, Inc.*, No. 21-20415, 2022 WL 557880, at *1-3 (D.N.J. Feb. 24, 2022). To determine which standard is appropriate, the Third Circuit has articulated the following framework:

> [W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (citations and quotations omitted). This bifurcated standard is the result of an intent to balance the competing purposes of the FAA, which aims to foster "efficient and speedy dispute resolution" while upholding the "significant role courts play in interpreting the validity and scope of contract provisions." *Id.* at 773 (citations omitted). Ultimately, "[t]he centerpiece of that framework is whether the existence of a valid agreement to arbitrate is apparent from the face of the complaint or incorporated documents." *Singh v. Uber Techs., Inc.*, 939 F.3d 210, 218 (3d Cir. 2019) (citing *Guidotti*, 716 F.3d at 774–76).

Here, neither party cites nor even addresses the applicable standard or framework for analyzing the present motion. Applying the *Guidotti* standard, the appropriate legal framework is Rule 12(b)(6). The Second Amended Complaint refers to multiple agreements, including the ASA

and the IP Sublicense Agreement, that are integral to Plaintiffs' allegation that the Mount Laurel ClearChoice dental practice is a franchise under the NJFPA. Although the agreements are not attached to the operative complaint, they were previously filed on the docket and are incorporated by reference into the Second Amended Complaint by citation to the prior filings. Accordingly, the Court considers these documents without converting the motion into one for summary judgment. *See Guidotti*, 716 F.3d at 776.

### B.    Motion to Dismiss

When considering a motion to dismiss under the Rule 12(b)(6) standard, a court must accept the complaint's well-pleaded allegations as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005). Through this lens, the court then conducts a three-step analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Next, the court should identify and disregard those allegations that, because they are no more than "the-defendant-unlawfully-harmed-me accusation[s]," are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678; *Malleus*, 641 F.3d at 563. Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

On such a motion, the court may only consider the facts alleged in the pleadings, any attached exhibits, and any matters of judicial notice. *S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). If any other matters outside the pleadings

are presented and the court does not exclude them, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. FED. R. CIV. P. 12(d).

## V.     DISCUSSION

"Because '[a]rbitration is a matter of contract between the parties,' a judicial mandate to arbitrate must be predicated upon the parties' consent." *Guidotti,* 716 F.3d at 771 (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.,* 636 F.2d 51, 54 (3d Cir. 1980)). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

Here, the parties do not dispute that there are valid contracts containing arbitration clauses or that the sole claim asserted by Plaintiffs in this case under the NJFPA falls within the scope of such agreements. Rather, the instant motion presents two issues: (1) whether Defendants can compel arbitration under the ASA when they are not parties to that contract, and (2) whether Defendants can compel arbitration under the IP Sublicense Agreement when Plaintiffs contend that the dispute resolution provision contained therein did not survive termination of the Agreement. For the reasons set forth below, the Court finds that Defendant CCH can compel arbitration under the ASA, Defendant CCMS can compel arbitration under the IP Sublicense Agreement, and the dispute resolution provision contained in the IP Sublicense Agreement survived termination of that contract.

### A.     The ASA

The parties to the ASA are Plaintiff IDA and non-party CC Philadelphia. (ECF No. 32-1). Plaintiffs contend that Defendants cannot compel arbitration pursuant to the ASA because neither defendant is a signatory to the agreement, and both Defendants therefore lack standing to enforce the ASA's dispute resolution provision. (Pls.' Opp., ECF No. 63 at 2). Defendants assert that they

can compel arbitration under the ASA, even as non-signatories, based on state law principles of agency and equitable estoppel. (Defs.' Reply, ECF No. 67 at 2). Defendants note in this regard that Plaintiffs' claim under the NJFPA is "inextricably intertwined" with the ASA because Plaintiffs rely on the rights and obligations established by the ASA to support their allegation that a franchise existed under the NJFPA. (*Id.* at 3-4). Defendants argue that Plaintiffs cannot "cherry pick" those provisions of the ASA that support their NJFPA argument but also disavow the applicability of the ASA's dispute resolution provision because they chose not to name CC Philadelphia as a party. (*Id.* at 5). Defendants also contend that the corporate structure between Defendant CCH, Defendant CCMS, and non-party CC Philadelphia establishes an agency relationship between the entities that entitles Defendants to enforce the arbitration provision of the ASA. (*Id.* at 4).

With respect to Defendant CCH, the Court need not look to state law theories to determine whether CCH can enforce the ASA, because the allegations of the Second Amended Complaint are sufficient for purposes of the instant motion to establish that CCH is a party to that agreement. Plaintiffs expressly allege in the Second Amended Complaint that "[t]he ASA is between CCH and IDA" and that "[w]hile, technically, CC Philadelphia and IDA signed the ASA, in reality, the agreement is between CCH and IDA." (Second Am. Compl., ECF No. 57, ¶ 35). Accepting these allegations as true, as the Court must for purposes of this motion, the Court concludes that CCH is a party to the ASA and can therefore seek to enforce the arbitration provision contained therein. Moreover, Plaintiffs do not assert that the ASA is invalid or that their claim under the NJFPA falls outside the scope of the arbitration provision. Thus, the Court concludes that Plaintiffs' claim against Defendant CCH is subject to ASA's arbitration provision.

With respect to Defendant CCMS, by contrast, the Second Amended Complaint does not allege that CCMS is a party to the ASA or that the agreement is effectively between IDA and

CCMS. As set forth above, Defendants argue that CCMS can nonetheless compel arbitration under the ASA pursuant to state law principles of agency and equitable estoppel.  (Defs.' Reply, ECF No. 67 at 2). While Defendants note that the Court should apply the forum state's choice of law rules to determine which state's substantive state law to apply, Defendants proceed to apply New Jersey law without a choice of law analysis. (*Id.* at 2 n.4). The Court, however, need not address whether CCMS may compel arbitration under the ASA pursuant to state law principles of agency or equitable estoppel because the Court finds, for the reasons that follow, that CCMS may compel arbitration pursuant to the IP Sublicense Agreement, regardless of whether it may also seek to compel arbitration under the ASA.

**B.      The IP Sublicense Agreement**

The IP Sublicense Agreement is a contract between Plaintiff IDA and Defendant CCMS, and Plaintiffs therefore do not assert that CCMS lacks standing to seek to compel arbitration pursuant to this Agreement. (ECF No. 20-2). Rather, Plaintiffs contend that the Court cannot compel arbitration under the IP Sublicense Agreement because the arbitration clause contained therein did not survive termination of the contract. (Pls.' Opp., ECF No. 63 at 3). Specifically, Plaintiffs note that one section of the IP Sublicense Agreement – Section 6.1 entitled "Limitation of Liability" – expressly states that "[t]his Section 6.1 shall survive termination of this Agreement." (*Id.*) Plaintiffs argue that because the remaining sections of the Agreement, including the dispute resolution provision, do not contain similar express language, by implication such sections did not survive termination. (*Id.*) Plaintiffs contrast the language of the IP Sublicense Agreement with the language of the ASA, which explicitly states that the dispute resolution provision will survive termination of the agreement. (*Id.*) Plaintiffs argue that Defendants knew how to include survival language if they intended the dispute resolution provision in the IP Sublicense Agreement to

survive termination, and because the dispute resolution clause in the IP Sublicense Agreement is not specifically designated as surviving termination, the clause has no effect. (*Id.* at 3-4).

Initially, the Court notes that at the time Plaintiffs filed the original complaint in this matter, the IP Sublicense Agreement was not yet terminated, and the dispute resolution provision was still in effect. Indeed, Plaintiffs allege in the Second Amended Complaint that the IP Sublicense Agreement did not terminate until thirty days after receipt of the September 12, 2025 Termination Letter, which they received on September 15, 2025. (Second Am. Compl., ECF No. 57, ¶¶ 103, 105). The IP Sublicense Agreement therefore did not terminate until October 15, 2025.[3] Plaintiffs instituted this litigation on September 26, 2025 instead of following the dispute resolution mechanism set forth in the IP Sublicense Agreement.

Plaintiffs contend that they could not have followed the dispute resolution protocol at the time they filed the original complaint because their claim under the NJFPA did not accrue until the effective date of termination of the IP Sublicense Agreement in October 2025, at which time the dispute resolution clause also terminated. Even assuming that the NJFPA applies for purposes of this motion, Plaintiffs cite no authority for their assertion that a claim under the NJFPA accrues only upon the effective date of termination of an alleged franchise and not at the time notice of termination is provided. Moreover, Plaintiffs' argument is contrary to the allegations in the complaint they filed on September 26, 2025, wherein Plaintiffs did not allege an anticipatory violation of the NJFPA but instead alleged that Defendants had already "repeatedly and willfully" violated the NJFPA. (Compl., ECF No. 1, ¶¶ 53, 62) (defendants "have repeatedly and willfully

---

[3] Although not alleged in the Second Amended Complaint, the parties agreed to extend the deadline for termination through October 17, 2025. (ECF No. 13-8). The exact date of termination is inconsequential for purposes of this motion because Plaintiffs instituted this civil action prior to either termination date.

violated the NJFPA[;]" defendants "are liable for willfully and without cause violating the NJFPA").

Regardless, the Court finds that even if the IP Sublicense Agreement was terminated at the time Plaintiffs' claim under the NJFPA accrued, the arbitration provision survived termination of the contract. The expiration of a contract does not automatically extinguish the parties' duty to arbitrate a dispute arising under the contract, as courts must presume that the parties intended to arbitrate disputes arising under the contract unless the parties expressly or clearly imply an intention to disavow arbitrability upon the expiration of the contract. *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 204 (1991) (recognizing "presumption in favor of post-expiration arbitration of matters unless negated expressly or by clear implication . . . [for] matters and disputes arising out of the relation governed by contract") (internal quotation marks and brackets omitted).[4] "Where there is no express language or clear indication to the contrary, an arbitration clause will be enforceable as to contractual disputes after termination." *New Jersey Psychological Ass'n v. MCC Behav. Care, Inc.*, No. 96-3080, 1997 WL 33446538, at *2 (D.N.J. Sept. 17, 1997) (citing *Nolde Bros. v. Bakery and Confectionery Workers Union,* 430 U.S. 243, 250 (1977)). In determining whether the parties intended an arbitration provision to survive termination of an agreement, courts should consider the contract in its entirety. *Shivkov v.*

---

[4] In *Litton*, the Supreme Court addressed post-termination arbitration of disputes in the context of a collective bargaining agreement, but several circuit courts have applied the *Litton* presumption in favor of post-expiration arbitration of matters in the FAA context. *See Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1060 (9th Cir. 2020) (applying *Litton* presumption in FAA context after noting that First, Second, Sixth, Eighth and D.C. Circuits also applied *Litton* in FAA context). The Third Circuit has applied *Litton* in the FAA context in an unpublished decision. *Townsend v. Pinnacle Ent., Inc.*, 457 F. App'x 205, 209 (3d Cir. 2012). The Court applies the presumption of arbitrability set forth in *Litton* in deciding the instant motion.

*Artex Risk Sols., Inc.*, 974 F.3d 1051, 1060 (9th Cir. 2020) ("[L]ooking to the Agreements as a whole is the proper mode of analysis here.").

In this case, the IP Sublicense Agreement does not expressly state that the right to arbitrate terminates once the IP Sublicense Agreement is terminated, and the Court must therefore determine whether the contract implies that the parties did not intend for their arbitration obligations to survive termination. Plaintiffs rely on the survival language in the "Limitation of Liability" provision, and the absence of a similar carve-out in the dispute resolution provision, to support their argument that the dispute resolution clause did not survive termination. Several courts have considered and rejected a similar argument and concluded that the omission of an express provision regarding survival of an arbitration clause, despite survival language in other provisions of a contract, will not negate the presumption of arbitrability.

In *Huffman v. Hilltop Companies, LLC,* 747 F.3d 391, 393-94 (6th Cir. 2014), for example, the defendant sought to compel arbitration pursuant to a contract with a survival clause that expressly delineated twelve contract provisions that would survive contract termination, but the arbitration section was not one of the twelve surviving provisions. The Sixth Circuit found that the "omission of the arbitration clause from the survival clause . . . did not clearly imply that the parties did not intend for the arbitration clause to have post-expiration effect[.]" *Id.* at 399. In so finding, the Sixth Circuit considered "the contract as a whole – the survival clause and its relationship to the other clauses in the agreement" and noted that other provisions of the contract which would typically survive termination, including a severability clause and an integration clause, also were not included in the survival clause. *Id*. at 397. Thus, it would be "illogical to conclude" that such provisions would be "in effect only prior to the agreement's expiration," and the Sixth Circuit therefore held that the parties were required to proceed to arbitration. *Id.* at 397-98.

14

Similarly, in *Symyx Techs., Inc. v. Stargate Mobile LLC*, No. 06-12632, 2006 WL 2943301, at \*2 (E.D. Mich. Oct. 13, 2006), the court considered a contract that expressly defined several sections that would survive termination, but the dispute resolution clause was not identified as a surviving section. Considering the contract as a whole, the *Symyx* court found that "it does not make sense that the arbitration clause does not survive termination simply because it was not expressly designated as surviving," particularly when other provisions, including a severability clause and a choice of law clause, which "one would expect to survive termination," also were not designated in the survival clause. *Id.*

In *OwnZones Media Network, Inc. v. Sys. in Motion, LLC*, No. 14-0994, 2014 WL 4626302, at \*6 (W.D. Wash. Sept. 15, 2014), a court again considered the survival of an arbitration clause where the contract's survival provision did not include the arbitration clause in a list of contract sections that would survive termination. The court in *OwnZones* found that it was "not clear that this list is intended to be an exhaustive inventory of the contract provisions that survive termination of the contract." *Id.* The court noted that "the survival clause omits certain procedural provisions that ordinarily would be expected to survive termination of the contract, including, for example, the contract's integration and severability clauses," and that "[i]t would be a strained reading of the contract to conclude that, upon expiration, the parties no longer intended the agreement to be severable or the ban on extrinsic evidence to be in effect." *Id.* The court concluded that "the survival clause is, at best, ambiguous as to whether the parties' duty to arbitrate survives termination of the contract" and found that "the survival clause does not rise to the level of the 'clear implication' necessary to rebut the presumption of arbitrability." *Id.* at \*7 (quoting *Nolde Bros.*, 430 U.S. at 255).

15

Here, the IP Sublicense Agreement contains only a single sentence in Section 6.1 which states that "[t]his Section 6.1 shall survive termination of this Agreement." (Pls.' Opp., ECF No. 63 at 3). The Agreement does not include a comprehensive survival clause that excludes the arbitration provision and does not state that only Section 6.1 and no other terms in the Agreement would survive termination, nor does the dispute resolution provision explicitly state that it does not survive termination. *See Shivkov*, 974 F.3d at 1063 (noting that contract may have implied that arbitration obligations would not survive termination "if the survival clause stated that only the terms of that section and no other terms in the Agreement would survive termination, if the Agreement included a comprehensive survival clause, or even if the Arbitration Clause explicitly stated that it does not survive termination"). Considering the IP Sublicense Agreement in its entirety, the Court finds that the survival language in Section 6.1 is insufficient to imply that the parties intended for their arbitration obligations to terminate with the Agreement. The arbitration provision expressly provides that "[a]ny and all controversies arising out of this Agreement" shall be settled pursuant to the dispute resolution provision in the contract, and further states that "[i]t is the intent of the Parties that this Section 5.2 provide a broad arbitration clause and is intended to include claims and causes of action regarding, arising out of, or relating to this Agreement, whether arising in contract, tort, statute, regulation, common law or otherwise." (ECF No. 20-2 at 7-8). Accepting Plaintiffs' argument would require the Court to ignore the parties' intended broad nature of this arbitration provision and find that, despite that stated intent and express language that "any and all controversies" shall be subject to the dispute resolution protocol, the parties intended to arbitrate only disputes that occurred during the life of the Agreement and not those which resulted in termination of the Agreement. Such construction is contrary to the parties' stated intent and is illogical.

Moreover, as in *Huffman*, *Symyx*, and *OwnZones*, other provisions of the IP Sublicense Agreement that would typically survive termination, such as a severability provision and a choice of law provision, do not expressly indicate that they survive termination, thereby further indicating that the isolated sentence providing for the survival of Section 6.1 was not intended to reflect that it was the exclusive contract provision to survive termination.

Plaintiffs also cite the ASA, which contains an express survival clause, as purported evidence that Defendants knew how to ensure that the arbitration clause survived termination of a contract, if such was their intent. Defendants respond that the inclusion of a survival clause in the ASA is further evidence that the parties intended for the dispute resolution provision to survive termination, as it would be "absurd" for the parties to provide different dispute resolution procedures for contracts and claims that are intertwined. (Defs.' Reply, ECF No. 67 at 9).  The Court finds that the omission of a survival clause in the IP Sublicense Agreement, and the inclusion of a survival clause in the ASA, at best invites ambiguity as to whether the parties intended for the dispute resolution clause to survive expiration of the IP Sublicense Agreement. This evidence does not rise to the level of "clear implication" necessary to rebut the presumption of arbitrability.[5] *See Nolde* Bros., 430 U.S. at 255.

In so finding, the Court rejects Plaintiffs' reliance on *Foster Wheeler Passaic, Inc. v. County of Passaic*, 630 A.2d 280 (N.J. Super. Ct. App. Div. 1993), which was decided under New

---

[5] The Court also notes that the ASA, as amended, is dated July 2, 2020, while the IP Sublicense Agreement is dated November 1, 2017. (ECF No. 20-2, 32-1). The parties do not address whether the original ASA contained a similar survival clause or if the survival clause was added to the 2020 amended contract. Nonetheless, Plaintiffs rely only on the language of the 2020 ASA rather than language from a contract drafted contemporaneously with the IP Sublicense Agreement. Because Defendants may have added the survival provision to the ASA in 2020 to clarify the contractual obligation to arbitrate claims following termination of the agreement, the inclusion of language in a 2020 contract is not necessarily indicative of the parties' intent when they entered into the IP Sublicense Agreement nearly three years prior.

17

Jersey law and did not employ the presumption of arbitrability applicable under federal law. In *Foster Wheeler*, the New Jersey Superior Court, Appellate Division considered the specific language of the arbitration clause at issue in that case, which stated that unless certain conditions precedent were satisfied, "neither party [had] any rights, obligations or liabilities" except for the rights and obligations specifically delineated in two sections which did not provide for arbitration. *Id.* at 284. The court held that the arbitration clause was inoperative because the contract itself did not impose the right or obligation to arbitrate disputes given that the conditions precedent were not met. *Id.* Furthermore, the court in *Foster Wheeler* compared the language of the arbitration provision in the contract at issue with a provision regarding default and termination of the contract and concluded, based on the specific language of the agreement, that "arbitration was envisioned as a vehicle for resolving disputes over obligations of the parties as they occurred during the course of the contract." *Id.* at 285. Here, by contrast, the IP Sublicense Agreement was a valid, enforceable contract at the time of the events giving rise to Plaintiffs' claim, and Plaintiffs do not contend that the IP Sublicense Agreement was inoperative because it was subject to a condition precedent that did not occur. Plaintiffs also do not argue that the specific language of the IP Sublicense Agreement is similar to that in *Foster Wheeler* to support a finding that arbitration was envisioned only for disputes arising during the course of the contract.

In summary, Plaintiffs fail to demonstrate that the parties expressly negated the presumption in favor of post-termination arbitration, or clearly implied that their arbitration obligations would not survive termination of the IP Sublicense Agreement. Having considered the contract in its entirety, the Court concludes that the inclusion of survival language in Section 6.1 and in a subsequent contract does not clearly imply that the arbitration clause in the IP Sublicense Agreement was intended to terminate with the contract. Given the strong presumption in favor of

18

arbitration and Plaintiffs' failure to present sufficient evidence to negate the presumption of arbitrability, the Court finds that CCMS can compel arbitration pursuant to the IP Sublicense Agreement. Since Plaintiffs do not dispute that their claim under the NJFPA falls within the scope of the dispute resolution clause, their claim is subject to arbitration.

### C.    Plaintiffs' Requests for Relief

Plaintiffs did not file a cross-motion yet request various forms of affirmative relief in their opposition brief. First, Plaintiffs request that the parties be compelled to participate in mediation prior to arbitration because the dispute resolution provisions in the ASA and IP Sublicense Agreement provide for a multi-tiered process which requires the parties to first seek mediation, then arbitration, and then further mediation. (Pls.' Opp., ECF No. 63 at 1 n.1). Second, Plaintiffs request that Defendant CCH participate in this multi-tiered dispute resolution process.[6] (*Id.* at 1). Third, Plaintiffs ask that the Court strike certain provisions of the ASA and IP Sublicense Agreement that purportedly conflict with the NJFPA. (*Id.*) Finally, Plaintiffs seek an Order compelling Defendants to produce the books and records of CC Philadelphia. (*Id.*)  Each of these requests for relief is denied as set forth below.

### a.    Request to Compel Mediation

The dispute resolution provisions in both the ASA and the IP Sublicense Agreement provide for a multi-tiered dispute resolution process which requires the parties to first submit a dispute to mediation through the American Arbitration Association and only submit their dispute to binding arbitration if mediation is unsuccessful. Both contracts further provide that the parties must engage in post-arbitration mediation if one party disagrees with the arbitration award.

---

[6] Defendants agree that CCH will participate in the dispute resolution proceedings. (Defs.' Reply, ECF No. 67 at 11). Accordingly, the Court need not address this issue.

19

Plaintiffs assert that if the Court finds the dispute resolution provisions of each contract applicable, then the Court must compel the parties to participate in mediation prior to arbitration, as well as post-arbitration mediation, in accordance with the terms of the contracts. Plaintiffs rely solely on the terms of the contracts and cite no authority in support of their request.

The FAA states that, upon motion of either party to a contract, a court shall compel arbitration of claims arising out of that contract if it contains a valid arbitration clause. *See* 9 U.S.C. § 4. Specifically, § 4 of the FAA provides: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*

Although the FAA expressly addresses only arbitration, some courts have interpreted this statutory language broadly to encompass mediation. "The Third Circuit has yet to rule on whether the Federal Arbitration Act governs contracts with mediation clauses, and courts outside this circuit have reached opposing conclusions." *Covoro Mining Sols., LLC v. Westlake Chemicals & Vinyls, LLC,* No. 23-1362, 2024 WL 3181878, at *3 (D. Del. June 26, 2024). In *Trujillo v. Gomez*, No. 14-2483, 2015 WL 1757870, at *2 (S.D. Cal. Apr. 17, 2015), a court considered whether it could compel mediation pursuant to a tiered dispute resolution provision, similar to the one in the instant case, which required the parties to first participate in mediation before participating in binding arbitration. Although the court in *Trujillo* applied California law rather than the FAA, the court looked to federal law for guidance, noting that "FAA remedies, including motions to compel[,] are

20

not appropriately invoked to compel mediation." *Id.* at *9. Because California law similarly only authorized motions to compel arbitration and "[n]o mention is made of mediation[,]" the court concluded that it did not have authority to compel mediation. *Id.* By contrast, in *U.S. ex rel. Thyssenkrupp Safway, Inc. v. Tessa Structures, LLC*, No.10-512, 2011 WL 475000, at *3 (E.D. Va. Feb. 4, 2011), a court enforced a tiered dispute resolution provision that provided for mediation as a condition precedent to arbitration. The court stated that "for the purposes of the FAA, a provision providing for 'mediation' carries the same effect as one providing for 'arbitration'" and stayed the case "pending the outcome of mediation or arbitration" as provided for in the contract between the parties. *Id.* at *5.

Here, Defendants moved for an order compelling arbitration under the FAA. Plaintiffs request mediation but proffer no argument as to whether this Court has the authority under the FAA to compel the parties to first engage in mediation. (Pls.' Opp., ECF No. 63 at 1, 4). In light of Plaintiff's failure to properly file a cross-motion and the conflicting decisions set forth above, and absent any argument concerning this Court's authority to compel mediation prior to or following arbitration, the Court declines to do so.

### b.    Request to Strike Provisions of the ASA and IP Sublicense Agreement

As noted above, Plaintiffs seek to strike provisions of the ASA and IP Sublicense Agreement. Specifically, Plaintiffs assert that each contract contains a fee-shifting provision that awards the prevailing party its reasonable attorneys' fees and costs, as well as a "Limitation of Liability" provision that limits "aggregate liability." (Pls.' Opp., ECF No. 63 at 5). Plaintiffs contend that these provisions "run contrary to the text of and public policy underlying the NJFPA." (*Id.*).

21

Again, Plaintiffs did not file a cross-motion seeking affirmative relief, and the Local Civil Rules for the District of New Jersey do not permit affirmative relief in the absence of a cross-motion. *See* L. Civ. R. 7.1(h) ("A cross-motion related to the subject matter of the original motion may be filed by the party opposing the motion together with that party's opposition papers[.]"); *Percella v. City of Bayonne,* No. 14-3695, 2021 WL 926613, at *4 (D.N.J. Mar. 10, 2021) (court declined to consider submission in opposition to motions for summary judgment as cross-motion for summary judgment because plaintiff failed to comply with Local Civil Rules, noting that "[a] motion is defined by certain formal requisites, most prominently a notice of motion"), *aff'd*, No. 21-1504, 2022 WL 2207832 (3d Cir. June 21, 2022); *see also Smith v. Premiere Valet Servs., Inc.,* No. 19-09888, 2020 WL 7034346, at *14 (C.D. Cal. Aug. 4, 2020) ("Courts in this and other districts have concluded that a request for affirmative relief is not proper when raised for the first time in an opposition."); *In re WorldClass Processing, Inc.*, 346 B.R. 132, 136 n.5 (Bankr. W.D. Pa. 2006) ("[A] request for relief included in a brief or responsive pleading is not permitted. Motions must be filed separately from responses, briefs, etc., in order that proper notice is provided."). Accordingly, the Court denies Plaintiffs' request as procedurally improper.

Even if the Court ignored the procedural irregularity and considered Plaintiffs' request on the merits, such request would be denied. Plaintiffs' request exceeds the scope of motion practice permitted pursuant to this Court's Text Order dated October 22, 2025, which limited dispositive motions at this time to motions based on contractual dispute resolution provisions. (ECF No. 50). In addition, Plaintiffs' request to strike contract provisions on the basis that they run contrary to the NJFPA requires a threshold finding that the NJFPA applies, which is a disputed issue in this

case.[7] Because the Court has concluded that the parties intended to submit their underlying dispute to arbitration, "any further matters surrounding the dispute are to be submitted to the arbitration procedure." *Bell Atl.-Pennsylvania, Inc. v. Commc'ns Workers of Am., AFL-CIO, Loc. 13000*, 164 F.3d 197, 201 (3d Cir. 1999); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019) ("We have held that a court may not 'rule on the potential merits of the underlying' claim that is assigned by contract to an arbitrator[.]"); *Arkcom Digital Corp. v. Xerox Corp.*, 289 F.3d 536, 539 (8th Cir. 2002) ("Whether the Agreement validly limits the arbitrator's remedies for an [Arkansas Franchise Practices Act] violation does not affect the validity of the agreement to arbitrate. Rather, issues of remedy go to the merits of the dispute and are for the arbitrator to resolve in the first instance."). Indeed, the Third Circuit has stated: "Once a dispute is determined to be validly arbitrable, all other issues are to be decided at arbitration. Since the purpose of the FAA is to ensure that agreements to arbitrate are enforced, a court compelling arbitration should preserve the remaining disputed issues for the arbitrator to decide." *Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 230–31 (3d Cir. 1997). "It would be anomalous for a court to decide that a claim should be referred to an arbitrator rather than a court, and then, by deciding issues unrelated to the question of forum, foreclose the arbitrator from deciding them." *Id.* at 231.

Plaintiffs rely on *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212 (3d Cir. 2003), in support of their argument that the Court may nonetheless strike certain provisions of the IP Sublicense Agreement and ASA that conflict with the NJFPA before the case proceeds to arbitration. Plaintiffs' reliance on *Spinetti*, however, is misplaced. In *Spinetti*, the Third Circuit considered whether a court, when faced with an unenforceable contract provision, may sever provisions of an arbitration

---

[7] Defendants note that they have "consistently maintained that the NJFPA does not apply because no franchisor/franchisee relationship existed." (Defs.' Reply Br., ECF No. 67 at 10).

23

agreement that affect contract validity or must find that the entire agreement is void due to the unenforceable provision. *Id.* at 213. The district court in *Spinetti* had concluded that a provision in the arbitration agreement requiring each party to pay its own attorney's fees, regardless of the outcome of the arbitration, ran counter to statutory provisions under Title VII and the Age Discrimination in Employment Act that permit an award of attorney's fees and costs to a prevailing party. *Id.* at 216. Rather than deem the entire arbitration agreement invalid, the court voided the attorney's fee and arbitration cost provision and compelled the parties to arbitration. *Id.* at 213. The Third Circuit found that the district court properly excised the provision that conflicted with federal law and then compelled the parties to arbitration. *Id. Spinetti* thus holds that in determining whether an agreement to arbitrate is valid, a court may strike a particular provision that would otherwise render an arbitration agreement unenforceable and thereafter compel the parties to arbitration. *Id.*

In the instant case, however, Plaintiffs do not argue that a particular provision of the IP Sublicense Agreement or ASA renders either agreement in its entirety invalid or unenforceable. As there is no challenge to the validity of either contract, the Court need not determine as a threshold matter whether a particular contract provision should be stricken. Plaintiffs' request to strike the attorneys' fee and "Limitation of Liability" provisions of the IP Sublicense Agreement and ASA is consequently denied.

**c.      Request to Compel Production of Books and Records from CC Philadelphia**

Finally, the Court addresses Plaintiffs' request to compel Defendants to produce the books and records of CC Philadelphia. Plaintiffs represent that they were "open to mediation" with CC Philadelphia but requested production of CC Philadelphia's books and records prior to mediation, which CC Philadelphia is purportedly required to produce pursuant to its operating agreement.

24

(Pls.' Opp., ECF No. 63 at 6). Defendants oppose the request for production of CC Philadelphia's books and records on the basis that there is no claim in the Second Amended Complaint related to the operating agreement, and they argue that Plaintiffs may not amend their complaint to assert a new claim by way of opposition to a dispositive motion. (Defs.' Reply, ECF No. 67 at 11).

For the same reasons set forth above, the Court finds that Plaintiffs may not seek affirmative relief in an opposition brief. Moreover, Plaintiffs fail to address the relevance of the books and records of CC Philadelphia to the NJFPA claim or Defendants' defenses in this case, *see* FED. R. CIV. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"), and they cite no authority to support a finding that the Court may compel parties to produce documents that are not relevant under Rule 26 standards and are sought solely to aid in mediation. Accordingly, this request is also denied.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss the Second Amended Complaint and Compel Arbitration Pursuant to Federal Rule of Civil Procedure 12(b)(6), (ECF No. 60), is **GRANTED** to the extent Defendants seek to compel arbitration and **DENIED** to the extent Defendants seek dismissal of this case. This matter is **STAYED** pending the results of arbitration. In addition, Plaintiffs' affirmative requests for relief, as set forth in their opposition brief, are **DENIED**. An appropriate Order accompanies this Opinion.

**CHRISTINE P. O'HEARN**
**United States District Judge**

Dated: July 21, 2026